UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SETH ADAM VILCHUCK,                                )<br>                                                                )<br>                        Plaintiff,                       )<br>                                                                )<br>               v.                                              )      No. 1:23-cv-02184-JMS-TAB<br>                                                                )<br>CENTURION OF INDIANA,                          )<br>LISA HAMBLEN HSA,                                )<br>CHARLES HOUCHINS AHSA,                      )<br>JESSICA LOVE AAM,                                 )<br>MERSHAN MD,                                           )<br>HEFLIN MD,                                                )<br>KELLY MCCAFFERTY Mental Health,         )<br>MANNING Mental Health,                           )<br>CHRISTINA CONYERS Grievance Supervisor, )<br>TAYLOR MCCORKLE Grievance Specialist,  )<br>TERRY Officer,                                            )<br>REAGLE Warden,                                        )<br>HOCKY Officer,                                          )<br>KEYS Officer,                                             )<br>                                                                )<br>                        Defendants.                     ) | |

**ORDER SCREENING COMPLAINT, DENYING PENDING MOTIONS,
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Seth Vilchuck is a prisoner at Pendleton Correctional Facility. He has filed this civil action under 42 U.S.C. § 1983 alleging that Centurion Health of Indiana, certain Centurion employees, and certain Pendleton employees have been deliberately indifferent to his physical and mental health care needs. Because Plaintiff is a prisoner, this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). As explained below, some of Plaintiff's claims **shall proceed**, and others are **dismissed**. Additionally, Plaintiff has now filed seven motions for preliminary injunction in this case. For the reasons stated below, these motions

are **denied without prejudice**. He also has filed a "motion for leave to prosecute," which is **denied**.

## I. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

The complaint alleges that beginning with Plaintiff's move to Pendleton from a different facility (apparently Wabash Valley) in May 2023, Centurion employees HSA Lisa Hamblen, AHSA Charles Houchins, AAM Jessica Love, Dr. Mershan, and Dr. Heflin have neglected to provide adequate medical treatment for a chronic physical health condition. Although Plaintiff fails to explicitly name the condition, it is evident that he is referring to hypoglycemia or a diabetic condition. He states that these persons have failed and continue to fail to regularly monitor his glucose levels through Accu-Chek or A1C testing, contrary to the orders of a physician at Wabash

Valley. Generally, he alleges the lack of care is in retaliation for his frequent filing of grievances at Pendleton. He also claims that he is being denied access to his medical records.

Plaintiff also contends that Centurion employees Kelly McCafferty and Manning (first name unknown) have acted with deliberate indifference to his mental health needs. He states that he previously was prescribed Zoloft but had to discontinue it due to an allergic reaction to the medication and has not been prescribed an alternative for months thereafter.

Regarding Centurion itself, Plaintiff alleges it is responsible "for allowing and knowing its employes [sic] were acting in a unprofessional and inhuman manner because of me filing grievances and consistantly [sic] seeking treatment over this 7 month stint on harsh form of retaliation has grown out of control." Dkt. 1, p. 3.

The complaint also alleges Pendleton grievance specialists Christina Conyers and Taylor McCorkle have failed to process various grievances he has filed in retaliation for frequent complaints of mistreatment, preventing him from exhausting administrative remedies and causing him "mental anguish pain and suffering . . . ." *Id.* at p. 6.

Furthermore, the complaint states that Pendleton Correctional Officers Terry, Hocky, and Keys have on occasion deliberately refused to provide him with his medically-prescribed diet for retaliatory purposes.

Finally, Plaintiff alleges that former Pendleton Warden Dennis Reagle generally "has violated my rights by turning a blind eye and deaf ear to all the systematic abuse I have noted" and claims that he is the "chief conspirator over the whole entity and chain of command abusing and manipulating his coworkers and comrads . . . ." *Id.* at p. 7.

Plaintiff's complaint seeks damages and injunctive relief.

3

### III. Discussion of Claims

**A. Claims that Shall Proceed**

The constitutional provision implicated by most of Plaintiff's claims is the Eighth Amendment's proscription against the imposition of cruel and unusual punishments. For an inmate to state a claim under § 1983 for medical mistreatment or the denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing *Estelle*).

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Plaintiff has sufficiently stated claims of Eighth Amendment deliberate indifference against HSA Lisa Hamblen, AHSA Charles Houchins, AAM Jessica Love, Dr. Mershan, and Dr. Heflin, Kelly McCafferty, and Manning. That is, construing Plaintiff's pro se complaint liberally, he has sufficiently alleged that he has serious medical needs to which these persons were and are deliberately indifferent and these claims **shall proceed**. Additionally, Plaintiff has sufficiently stated Eighth Amendment deliberate indifference claims against Officers Terry, Hocky, and Keys

4

for allegedly interfering with the provision of a medically-necessary diet and these claims **shall proceed**. *See McDonald v. Hardy*, 821 F.3d 822, 888 (7th Cir. 2016) (holding that deliberate indifference by non-medical prison staff "can be shown with evidence that those employees ignored or interfered with a course of treatment prescribed by a physician"). Finally, he has sufficiently alleged that former Warden Reagle was personally involved in his mistreatment, and Plaintiff's claim against him **shall proceed**.[1]

### B. Claims that Are Dismissed

### 1. Centurion

Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To state a *Monell* claim, the plaintiff must identify an action taken by the municipality and allege a causal link between the municipality's action and the deprivation of federal rights. *Dean,* 18 F.4th at 235. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019).

"Liability under this standard is difficult to establish, requiring a § 1983 plaintiff to prove that a municipality, either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (cleaned up). Liability may attach in two circumstances: First, "if

---

[1] It appears that Reagle is no longer the warden at Pendleton and that that Trent Allen has taken his place. However, because Plaintiff states a claim against Reagle in his individual capacity he shall remain a named defendant in this action.

an express municipal policy or affirmative municipal action is itself unconstitutional, . . . a plaintiff has a straightforward path to holding the municipality accountable . . . [and] a single instance of a constitutional violation caused by the policy suffices to establish municipal liability." *Id*. (cleaned up). Second, a plaintiff may show "gaps in express policies or . . . widespread practices that are not tethered to a particular written policy—situations in which a municipality has knowingly acquiesced in an unconstitutional result of what its express policies have left unsaid." Id. (cleaned up). Under this theory, a plaintiff "must typically point to evidence of a prior pattern of similar constitutional violations" to "ensure that there is a true municipal policy at issue, not a random event." *Id*. (cleaned up). A company such as Centurion "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of respondeat superior for constitutional violations committed by [its] employees. [It] can, however, be held liable for unconstitutional … policies or customs." *Simpson v. Brown County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) (citing *Monell*, 436 U.S. at 690-91).

Plaintiff's complaint fails to sufficiently allege the existence of a policy, practice, or custom by Centurion that resulted in his lack of adequate health care. His allegations regarding the actions of individual employees under Centurion's supervision are insufficient to state a *Monell* claim. The claim against Centurion is **dismissed**.

### 2. Grievance Supervisors Conyers and McCorkle

The Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007);

6

*Grieveson v. Anderson*, 538 F.3d 763, 772 & n. 3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).

As explained in *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996), "any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Id.* at 1430-31 (internal citations omitted). Because Plaintiff had no expectation of a particular outcome of his grievances or complaints there is no viable claim which can be vindicated through 42 U.S.C. § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a prima facie case under § 1983).

Plaintiff's claims about Conyers and McCorkle failing to process his grievances might be relevant if the Defendants attempt to argue that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. But, they are not actionable claims in and of themselves. The claims against Conyers and McCorkle are **dismissed**.

## IV. Motions for Preliminary Injunction

Plaintiff has filed seven motions for preliminary injunction in this case. The first seeks to prevent Officer Keys from retaliating against him and includes allegations that Officer Keys withholds his medical diet. Dkt. 23. The second seeks to prevent Officer Terry from retaliating against him and includes allegations that Officer Terry withholds his medical diet. Dkt. 24. The third seeks to prevent an Officer Summers, who is not listed as a defendant in Plaintiff's complaint, from retaliating against him. Dkt. 25. The fourth seeks to prevent Officer Hocky from retaliating against him and includes allegations that Officer Hocky withholds his medical diet. Dkt. 26. The fifth seeks to compel Officer Terry to stop allegedly interfering with delivery of his legal mail. Dkt. 30. The sixth alleges that he is not receiving adequate medical treatment for a broken shoulder

7

that he suffered as the result of an excessive force incident and is requesting that this Court order an immediate transfer to a different facility for him to receive treatment, but he does not specify a particular person or persons who are denying him health care. Dkt. 36. The seventh mirrors the second in that it seeks to prevent Officer Terry from retaliating against him by denying Plaintiff his medically-necessary diet. Dkt. 38.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020).

The Court will not address the three threshold elements related to the third, fifth, and sixth injunction motions because a request for injunctive relief must be tied to the specific parties and claims on which the plaintiff is proceeding. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (cleaned up)); *see also DeBeers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). The third injunction seeks relief against a non-party. The fifth does seek relief against a party, but for claims that are unrelated to the present action. The sixth, while undoubtedly raising troubling claims, does not relate to any allegations in the complaint. As such, the Court lacks authority to grant the relief Plaintiff is currently requesting in these motions. *See Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying

claims and request for injunctive relief, district court has no authority to grant injunctive relief) (citing *DeBeers Consol. Mines*, 325 U.S. at 220).

With respect to these motions, the Court informs Plaintiff as follows. He may seek leave to file an amended complaint related to the facts and parties alleged in the fourth and sixth motions. If he does so, he may also re-file his requests for injunctive relief. If Plaintiff files an amended complaint, he must restate all of the claims and identify all of the parties against whom he wishes to proceed in the amended complaint, as it would take the place of the current complaint, and it must be screened by the Court accordingly.

As for the fifth injunction related to his legal mail, it does not appear to have any direct connection to the present lawsuit. He must pursue any claims related to inability to access the law library or interference with his legal mail through the IDOC grievance process and, if necessary, file a separate lawsuit on this matter.

The first, second, fourth, and seventh preliminary injunction motions do request relief against parties and on matters related to Plaintiff's complaint and on claims the Court has ordered to proceed. But, Plaintiff has submitted no evidence in support of them. Most notably, there is no evidence related to Plaintiff's alleged diabetic or hypoglycemic condition. The Court cannot grant injunctive relief based solely upon Plaintiff's unsworn allegations in his motions.

The Court notes that Plaintiff previously filed a preliminary injunction motion related to the allegedly inadequate treatment of his chronic health conditions. Dkt. 11. Magistrate Judge Baker held a telephonic status conference as soon as possible after that motion was filed. Dkt. 13. During it, Plaintiff elected to withdraw that motion. Dkt. 19, p. 2. Magistrate Judge Baker also discussed with Plaintiff and counsel for both Centurion and the Indiana Department of Correction the need for Plaintiff to access his medical records, and ordered counsel for Centurion to provide

9

copies of such records dating back to May 2023 no later than February 2, 2024. *Id.* Any request for injunctive relief raised in these motions must, at the least, be supported by evidence from Plaintiff's medical records as to his medical condition(s).

On a final note regarding the multiple injunction motions, the Court advises Plaintiff if he intends to re-file for injunctive relief, he must, to the extent possible, **state all of his claims and all of the relief he is seeking within a single motion**. Plaintiff may benefit from using the Court's motion for preliminary injunction form as a reference if he re-files for injunctive relief. The **clerk is directed** to include a motion for preliminary injunction form with Plaintiff's copy of this motion. With these observations, Plaintiff's motions for preliminary injunction, dkts. [23], [24], [25], [26], [30], [36], and [38], are **denied without prejudice**.

## V. Motion to Prosecute

Also before the Court is Plaintiff's "motion to prosecute." The motion is drafted on an Indiana state form seeking assignment of counsel for a pro se civil litigant. As such, the motion, dkt. [22], is **denied**. The Court notes that Magistrate Judge Baker ordered the clerk to send to Plaintiff a copy of this Court's standard motion for assistance recruiting counsel to his copy of the minute entry following the January 17 status conference. Dkt. 19-2. Plaintiff must submit any request for counsel with the Court using that form.[2]

## VI. Conclusion and Service of Process

Part III(A) of this Order includes all viable claims identified by the Court. If Plaintiff believes the complaint contains additional viable claims, he may identify those claims in a separate filing by **March 1, 2024**.

---

[2] The Court acknowledges that Plaintiff alleges in his fifth injunction motion that his legal mail related to this case is being withheld from him. However, the Court notes that Plaintiff did apparently receive the blank, endorsed subpoena that was sent to him along with the motion for counsel form. *See* dkt. 37.

Alternatively, as discussed above, Plaintiff may move for leave to file an amended complaint within the time limits established by rule or scheduling order. Any amended complaint should have the proper case number, 1:23-cv-2184-JMS-TAB and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

The **clerk is directed** to terminate Centurion, Christina Conyers, and Taylor McCorkle as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants Lisa Hamblen, Charles Houchins, Jessica Love, Dr. Mershan, Dr. Heflin, Kelly McCafferty, Manning, Officer Terry, Officer Hocky, Officer Keys, and Dennis Reagle. Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the defendants electronically. The medical defendants are identified as Centurion employees. Centurion is ORDERED to provide the full name and last known address of any medical defendant who does not waive service if it has such information. This information may be provided to the Court informally or may be filed ex parte.

**IT IS SO ORDERED.**

Date: 2/2/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

SETH ADAM VILCHUCK
149912
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

John Oosterhoff
Office of Indiana Attorney General
john.oosterhoff@atg.in.gov


Electronic Service to IDOC defendants at or formerly at Pendleton Correctional Facility:

    Officer Terry
    Officer Hocky
    Officer Keys
    Dennis Reagle

Electronic Service to Centurion employees:

    Lisa Hamblen
    Charles Houchins
    Jessica Love
    Dr. Mershan
    Dr. Heflin
    Kelly McCafferty
    Manning